FEE PAID        FILED

# BEFORE THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA   PM 1:39
### WESTERN DIVISION
255 E TEMPLE ST LOS ANGELES, CA 90012

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY: ___EEE___

TASLEEMA YASIN
PO Box 6009
BURBANK, CA. 91510
poss.pen.classaction@gmail.com
t.yasin.poss.pen@gmail.com

                    PLAINTIFF

                                        2:22-cv-08727-SVW(AFMx)

V.

                                        CASE NO.: _____

ESTATE OF
Ermias "Nipsey Hussle" Asgehedom
Samiel "blacc Sam" Asghedom
15821 Ventura Blvd Ste 370, Encino, CA 91436

Steven " Steve O  Carless
(Nipsey's Manager)
519 Hory St, Roselle, NJ 07203

Hank Fortener
(agent at ROC Nation/ Samiel's Manager)
540 West 26th Street, New York, NY 10001

ROC NATION
953 North Sycamore Ave, Los Angeles, California 90038

Sacks, Glazier, Franklin & Lodise LLP
(Firm who represents Samiel)
350 S Grand Ave #3500, Los Angeles, CA 90071

Terrance M Franklin
(Samiel's probate attorney)
350 S Grand Ave #3500, Los Angeles, CA 90071

Sedlmayr and associates, P.C

                    1

(Firm representing All Money In/ Nipsey's estate)
489 5th Ave, New York, NY 10017


Sebastian Zar and Theo Sedlmeyr
(Nipsey and Sam's music attorney)
489 5th Ave, New York, NY 10017

BARTON KLUNGMAN & OWTTING LLP
(Probate representation for Nipsey's Estate)
350 S Grand Ave #2200, Los Angeles, CA 90071

Jeffery b Harris, Christopher Higashi
(Nipsey Estate attorneys)
350 South Grand Avenue
Suite 2200
Los Angeles, CA 90071

All Money In
(Nipsey's label ran by Samiel)
15821 VENTURA BLVD SUITE 370
ENCINO, CA 91436

Atlantic Records
(Song: Hussle and Motivate - released as a single)
1290 Avenue Of The Americas
New YorkNY10104

Epic
(Song: Hussle In The House - released as a single)
9830 Wilshire Boulevard Beverly Hills, CA 90212
(310) 272-2555

SONY Music Entertainment and
DBA SONY ATV Music Publishing
(Nipsey's family and/or Estate sold Nipsey's catalog to Sony)
25 Madison Ave, New York, NY 10010

Epic
(Song: Hussle In The House - released as a single)
SONY Music Entertainment and
DBA SONY ATV Music Publishing
(Nipsey's family and/or Estate sold Nipsey's catalog to Sony)

2

## COMPLAINT FOR COPYRIGHT INFRINGEMENT, CONTRACT BREACH, THEFT AND CONVERSION, AND DAMAGES

TO THE HONORABLE, THE HIGH JUDGE OF SAID COURT:

1.     Comes now Ms. Tasleema Yasin, Pro Se, regarding her original compositions and a contract breach regarding several record deals, services rendered, contribution to song-making and original performances, which amounted to ultimately a copyright infringement, theft and conversion, and for which she seeks damages in the nature of compensatory and punitive, and every sort collectible under similarly situated circumstances.

2.     Specifically this matter involves all alleged above and

A. DIRECT COPYRIGHT INFRINGEMENT;
B. CONTRIBUTORY COPYRIGHT INFRINGEMENT;
C. VICARIOUS COPYRIGHT INFRINGEMENT

**INTRODUCTION**

3.   All set forth above at 1 - 2 is incorporated herein below by reference as if set forth more fully at length herein below.

4.   Defendant Sony Music Entertainment is one of the world's largest music entertainment companies. Both directly and through its affiliated companies and record labels, including the other Plaintiffs, Sony Music Entertainment produces, manufactures, distributes, markets, sells and licenses some of the most iconic and popular sound recordings of all time, as well as many of today's biggest hits.

5. Some of the hits include songs performed and released Presumably by Nipsey Hussle, the trade name and pseudonym, under which a now deceased recording artist creates, peforms, and released his music.

6. The Artists birth name was and is Ermias Asgehedom and those songs involved in this suit at bar include: HUSSLE IN THE HOUSE, and HUSSLE AND MOTIVATE, and quite possibly others.

7. Before he passed the Plaintiff Ms. Yasin and Defendant Nipsey Hussle worked on and together created these works to which she contributed greatly.  The promise of just and agreed compensation was given, and unfortunately Nipsey Hussle passed without having the opportunity to have made good on that promise and contractual agreement.

8. Thereafter the songs and works of the artist did major numbers and saw great success which will continue indefinitely quite likely because of the circumstances regarding his passing, what he meant to LA underground music and culture, and the impending increased worldwide exposure and stardom with new curious fans thereby making the songs do even more than they had done before earnings-wise and these too were proceeds to which Plaintiff was entitled as well as incidental run off from the songs performances and additional projects related made possible by and through the songs and her participation therein.

9. On 10/12/2022 DEMAND WAS MADE to all named herein above and in writing "… FOR COMPENSATION FOR THE ROLE OF TASLEEMA YASIN ("TAZ") AND HER RIGHTS IN THE ABOVE AND BELOW REFERENCED ORIGINAL COMPILATIONS FOR WHICH SHE HAS NEVER BEEN COMPENSATED…".

10. This was not, of course, her first attempt to resolve the dispute and failure of all involve to make available to her all rights, titles, and interests as well as proceeds

and incidentals that she was and is entitled to for her work and role in the projects as promised.

11. Further, previously she had obtained acknowledgement to entitlements and received a firm promise to pay and to make good on those promises as evidenced by the copy of the contract annexed and exhibited herewith between herself and others of the Defendants.

12. These others of the Defendants who, by and for the full Defendant pool, undertook to resolve the outstanding debt and dispute communicated herein above and below.

13. These parties accused herein and hereby together with all others, acting on behalf of all with or without their knowledge fully perhaps, who after issuing about $100K in forfeitable "good faith funds" (which were offered for her to agree to the settlement negotiation and agreement which further entailed additional payments that never came) basically forfeited the funds and breached the agreement by not paying the additional sums agreed and due.

14. This suit is over all of that, and over the original matters of just due owed to Ms. Yasin presently and still.

15. She now claims Theft, conversion, copyright infringements, breach of contract, and the right to damages because of it all, the delays, and missed opportunities resulting costing her and causing her conjuring harm and injury and great loss which is difficult to ascertain without conducting discovery herein and obtaining court ordered disclosures and accountings from all of the named parties and those others not named herein who have not been disclosed or otherwise hidden behind other participants.

16. Prior hereto there was a "…DEMAND OFFER TO SETTLE IS FOR $5 MILLION US TO SETTLE ALL CLAIMS ACROSS ALL VENUES OUT OF COURT…" and the other side has not availed themselves of this however by the notification sent out certified mail and Return Receipt for Parcels as proof all named herein and all agents and principals received due notice of this suit to be brought if the dispute was not amicably resolved by negotiation and settlement prior to filing.

17. None of the other parties have ever said anything further.

18. The acts done include and are not limited to all, some, or interchanging parties named herein together and apart benefitting to the exclusion of the copyright owner the exercising, without permission or legal authority, one or more of the exclusive rights granted to the copyright owner under section 106 of the Copyright Act (Title 17 of the United States Code).

19. These rights include the right to reproduce or distribute a copyrighted work. In the file-sharing context, downloading or uploading substantial parts of a copyrighted work without authority constitutes an infringement.

20. *They came to the table with $100K (See below attached exhibited agreement and declaration of TASLEEMA YASIN incorporated herein by reference) and all payments from song one from the time of commencement and on the masters side from song one (10%) including the other 3 songs and any samples (all pursuant to the same deal).*

21. The data on all platforms was supposed to be changed, and should be changed to include Plaintiff (but it has not been to date).

22. And many other things were promised pursuant to an agreement to settle out of court (See redacted abstract annexed).

23. Those things were never delivered.

24. Ms. Yasin received a 100K check and then the subsequent acts and contract obligations to agreed in the settlement for all parties never occurred.

25. She made several verbal and written demands.

26. None have been honored to date.

27. As such she deems the $100K as "Good faith" money to be adjusted against the balance to be paid within the contract for settlement terms and conditions proposed which they waived and thusly she asserts and concludes that the $100K good faith money paid is forfeited by the breach in the contract that the funds were issued in good faith to have her agree to and thusly delay filing of her suit and claims for recovery represented in part hereby.

28. Having never been paid to date, she deems the same forfeited conclusively, and after having it asserted to the others in writing they have never opposed, complained, or asserted otherwise such that moral and ethically the failure in the duty to speak or be bound should be held as binding against them as a matter of operation of law.

29. As agreed by the parties implicitly of course and expressly to get Ms. Yasin to contract with them and take them serious, abandoning the pursuit of her claims against all jointly and severally, Good faith money in this context was a deposit of money into an account or delivered to Ms. Yasin by a representative of the other side of the dispute to show that they have the intention of completing the deal to compromise and settle matters.

30. On information and belief she accuses and case histories suggest that in such instance It was unconscionable to offer her the $100K to induce her to agree to

settle only to later fall short on all other obligations associated basically resulting in a refusal to pay her and a communication that despite the agreement otherwise it was only ever intended that she receive the $100K in consideration of her agreement to waive suit for the full balance and accounting without that fact having ever been disclosed to her at any time.

31. While the offer was unconscionable and unfair she felt a great deal of pressure from life, and the passing of her colleague in Arts Nipsey Hussle, to compromise and settle to put the breach and violations against her to rest.  And she deemed the deal "…a something is better than nothing solution…" to the problem.

32. Good faith money is often later applied to the purchase but **may be non-refundable if the deal does not go through and the other side communicated this understanding to persuade her to agree, accept, and let the dispute go rather than file in court suing for more**.

33. On information and belief she alleges therefore that the $100K s non-refundable, was agreed to be non-refundable in the event of a breach of the agreement, and Ms. Yasin never accepted the partial payment in satisfaction of the entire debt neither expressly nor by implication or actions.

34. Specifically as can be seen annexed hereto Ms. Yasin communicated in the first person her demand for payment and specific performance at once, as well as the assertion of the waiver of the right to recoup or have offset of the funds ($100K) paid:

"…I have included some excerpts below which demonstrate that the obligation has been confessed to date in manners which I feel strongly that a Court will uphold and enforce. And within such time periods that the rights and duties remain enforceable. I claim damages at not less than $7.5 Million.  I offer at this time an opportunity for settlement in the amount of $5 Million US. In exchange I

will waive all other claims and consider the matters resolved and myself paid in full for my services and compensated for all lost possibilities, opportunities, recognition, good name, and residual collateral benefits which would have flowed from it being admitted sooner that I was in fact involved and had I been paid appropriately for that involvement in consideration of performance under the totality of the circumstances during and after the death of the Artist Nipsey Hussle…"

35. Ms Yasin communicated that "…this offer of settlement within [her] notice of intent to sue and demand for payment is inclusive of all contingency loss that [she had] taken by virtue of being alienated from projects that [she] was very much an integral part of and which were the better performing works in fact…".  To which there was no objection, rebuttal, nor written response to date.

36. She gave written notice thereby and warned expressly that "… If we [the parties] cannot come to a negotiated settlement this [notice of demand and intent to sue] is due notification to you that [she] will lodge suit in the US District Court for full recovery and all damages allowable by law and equity…".

37. She stated specifically that the accused, all of them, should "…[B]e advised that … [their] … reaction or lack of reaction … will give color to the acts that have transpired to date…".  They neither responded nor objected in any way to the notice they received stating this in writing.  To date they have completely ignored Ms. Yasin since giving her the $100K.  Her and her children and family have struggled a great deal since, and she has fretted a great deal suffering depression and economic hardship due to not having and having the use of her funds due to her.

## JURISDICTION AND VENUE

38. All set forth above at 1 - 37 is incorporated herein below by reference as if set forth more fully at length herein below.

39. The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a), insofar as this action arises under the Copyright Act of 1976, 17 U.S.C. §§ 101 et seq.

40. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. § 1400(a).

41. The Court has personal jurisdiction over some of the Defendants and the others are diverse whereas this action involves more than $75,000.00 but involves matters that raise violations of federal laws and the construction of the copyright laws and what they mean, including pursuant to Federal Rule of Civil Procedure 4(k)(2), for at least the following reasons: (1) Plaintiffs' claims arise under federal copyright law; (2) All of the Consolidated Defendants accused and named at 1 Defendants 1-15 above actively uses U.S.- based social media platforms in connection with its massive infringement of Plaintiffs' copyrights, and streams infringing videos through these social media platforms to consumers in the United States; (3) All of the Consolidated Defendants accused and named at 1 Defendants 1-15 above accomplishes its infringement, in part, by partnering with and compensating influencers located in the United States, including, on information and belief, in this District, for purposes of creation, reproduction, distribution, and performance of the infringing videos; (4) All of the Consolidated Defendants accused and named at 1 Defendants 1-15 above targets and attracts a substantial number of customers in the United States, and its infringement is an essential means of reaching, soliciting, and selling to these customers which acts in and affecting interstate commerce inasmuch as it spans across state lines and involves electronic and computer transmission and means across state lines; (5) All of the Consolidated Defendants accused and named at 1 Defendants 1-15 above maintains substantial business operations in the United States, on information and belief employing over one hundred people in the United States, including at offices in Los Angeles, California, as well as within this District (in which, on information and belief, All of the Consolidated Defendants accused and

named at 1 Defendants 1-15 above maintains and operates its U.S.-based distribution center) which was in part NIPSEY HUSSLE himself; and (6) All of the Consolidated Defendants accused and named at 1 Defendants 1-15 above has operated "pop-up" type stores throughout the United States by and through NIPSEY HUSSLES curbside album and mixtape sales, including in this District, featuring many of the "influencers" who appear in NIPSEY HUSSLES infringing video and musical works involved here.

## THE PARTIES

42. All set forth above at 1 - 41 is incorporated herein below by reference as if set forth more fully at length herein below.

43. NIPSEY HUSSLE is a recording artist sued herein in absentia and by and through naming of his Estate as well who is the stand in where he has passed prior to the bringing of this suit.  It is believed that this party had all obligation and authority to encourage or act as a catalyst to assure that Ms. Yasin was paid in full.

44. ESTATE OF Ermias "Nipsey Hussle" Asgehedom is the residue of the rights, titles, interests, intellectual property, and property otherwise of NIPSEY HUSSLE.  It is believed that this party had all obligation and authority to encourage or act as a catalyst to assure that Ms. Yasin was paid in full.

45. Samiel "blacc Sam" Asghedom (Brother and heir/partner/administrator and/or administrator assistant acting in the stead of NIPSEY HUSSLE in his absence) who acts as NIPSEY HUSSLE in his absence and is named as such because of that and because he was a key actor in offering settlement to Ms. Yasin (redacted agreement annexed as an exhibit). It is believed that this party had all obligation and authority to encourage or act as a catalyst to assure that Ms. Yasin was paid in full.

46. All Money In (Nipsey's label ran by Samiel) and is sued as it is the label who together with NIPSEY HUSSLE Ms. Yasin had an agreement and binding contract with for payment and just due for her work/participation. It is believed that this party had all obligation and authority to encourage or act as a catalyst to assure that Ms. Yasin was paid in full.

47. Steven " Steve O  Carless (Nipsey's Manager) who is named because of his role and key knowledge and information as it pertains to Ms. Yasins involvement and obligations of NIPSEY HUSSLE as it pertains to the works in question and at issue. It is believed that this party had all obligation and authority to encourage or act as a catalyst to assure that Ms. Yasin was paid in full.

48. Sedlmayr and associates, P.C (Firm representing All Money In/ Nipsey's estate) is named and sued for their information, role, and involvement inherent in their role as representing All Money In and/or Nipseys Estate as it pertains to ALL MONEY IN. It is believed that this party had all obligation and authority to encourage or act as a catalyst to assure that Ms. Yasin was paid in full. This party was involved in the initial suit and settlement. See attached Exhibits.

49. BARTON KLUNGMAN & OWTTING LLP (Probate representation for Nipsey's Estate) is named and sued for their information, role, and involvement inherent in their role as representing Nipseys Estate.  It is believed that this party had all obligation and authority to encourage or act as a catalyst to assure that Ms. Yasin was paid in full.  This party was involved in the initial suit and settlement. See attached Exhibits.

50. Jeffery B Harris, Christopher Higashi (Nipsey Estate attorneys) is named and sued for their information, role, and involvement inherent in their role as representing or their involvement with Nipseys Estate.  It is believed that this party has all obligation and authority to encourage or act as a catalyst to assure that Ms. Yasin is paid in full expeditiously from funds properly allotted for such.

51. Sacks, Glazier, Franklin & Lodise LLP (Firm who represents Samiel) is named and sued for their involvement with Samiel.  Samiel is the Brother and heir/partner/ administrator and/or administrator assistant acting in the stead of NIPSEY HUSSLE in his absence and who acts as NIPSEY HUSSLE in his absence and he and his representatives are named as such because of that and because he was a key actor in offering settlement to Ms. Yasin (redacted agreement annexed as an exhibit). It is believed that this party has all obligation and authority to encourage and act as a catalyst to assure that Ms. Yasin was and is paid in full. And it is believed that they have knowledge and information material to the suit which by law they were required to admonish that Ms. Yasin is to be paid by law.

52. Hank Fortener (agent at ROC Nation/ Samiel's Manager) is named and sued for their involvement with Samiel.  Samiel is the Brother and heir/partner/administrator and/or administrator assistant acting in the stead of NIPSEY HUSSLE in his absence and who acts as NIPSEY HUSSLE in his absence and he and his representatives are named as such because of that and because he was a key actor in offering settlement to Ms. Yasin (redacted agreement annexed as an exhibit). It is believed that this party has all obligation and authority to encourage and act as a catalyst to assure that Ms. Yasin was and is paid in full. And it is believed that they have knowledge and information material to the suit which by law they were required to admonish that Ms. Yasin is to be paid by law.

53. ROC NATION is named because of Hank Forteners employment with them involving them by and through Hank Fortener and is by and through this party involved and benefitted presumptively which sums are due to be disgorged possibly favorable to Ms. yasin.

54. Terrance M Franklin (Samiel's probate attorney) is named and sued for their involvement with Samiel.  Samiel is the Brother and heir/partner/administrator and/or administrator assistant acting in the stead of NIPSEY HUSSLE in his absence and

13

who acts as NIPSEY HUSSLE in his absence and he and his representatives are named as such because of that and because he was a key actor in offering settlement to Ms. Yasin (redacted agreement annexed as an exhibit). It is believed that this party has all ability to encourage, facilitate, and act as a catalyst to assure that Ms. Yasin was and is paid in full. And it is believed that they have knowledge and information material to the suit which by law they were required to admonish that Ms. Yasin is to be paid in full by law.

55. Sebastian Zar and Theo Sedlmeyr (Nipsey and Sam's music attorney) is named and sued for their involvement with Samiel and NIPSEY HUSSLE.  NIPSEY HUSSLE WAS THE ARTIST WITH WHOM YASIN WORKED DIRECTLY AND HAD AN EXPRESS AGREEMENT AS TO HER WORK AND SONGS.  Samiel is the Brother and heir/partner/administrator and/or administrator assistant acting in the stead of NIPSEY HUSSLE in his absence and who acts as NIPSEY HUSSLE in his absence and he and his representatives are named as such because of that and because he was a key actor in offering settlement to Ms. Yasin (redacted agreement annexed as an exhibit). It is believed that this party has all ability to encourage, facilitate, and act as a catalyst to assure that Ms. Yasin was and is paid in full. And it is believed that they have knowledge and information material to the suit which by law they were required to admonish that Ms. Yasin is to be paid in full by law.

56. Atlantic Records (Song: Hussle and Motivate - released as a single) is sued because the song was released through them and/or with their involvement.

57. Epic (Song: Hussle In The House - released as a single) is sued because the song was released through them and/or with their involvement.

58. Defendant Sony Music Entertainment ("SME") is a Delaware general partnership, the partners of which are citizens of New York and Delaware. SME's headquarters and principal place of business are located at 25 Madison Avenue, New York, New York, and it has substantial business operations in this District.

59. On information and belief, Defendants Does 1 through 15 excluding Sony own, operate, or are employees of or agents of each other or other parties involved in the common scheme and plan to divest Ms. Yasin of her quiet enjoyment and benefit of her rights of ownership in her copyrights and works, and/or are otherwise responsible for and proximately caused and are causing the harm and damages alleged in this Complaint.

60. Plaintiff are presently unaware of the other true names and/or the involvement of the defendants sued herein by the common names, assumed names, and/or fictitious designations of Defendants 1 through 15 excluding Sony who is named specifically and described herein, and for that reason sues them by those designations.

61. All of the above-named Defendants are accused to have known about and benefitted presumptively from the withholding from Ms. Basin which sums are due to be disgorged favorable to Ms. Yasin and her share in profits, proceeds, and successes of the songs involved with and occasioning this suit as referenced and outlined herein.

62. Plaintiff will seek leave to amend this pleading if necessary to identify those defendants more specifically when and/if their true names and involvement in the infringements and other wrongful conduct described above and hereinafter described are known.

**PLAINTIFFS' SOUND RECORDINGS**

63. All set forth above at 1 - 62 is incorporated herein below by reference as if set forth more fully at length herein below.

64. TASLEEMA YASIN is an avid writer, recording artist, and collaborator that worked with NIPSEY HUSSLE on several pieces with the promise of percentage points and pay based on the performance and overall compilation performances.

65. YASIN is by and through contract with NIPSEY HUSSLE and work with NIPSEY HUSSLE, and all with whom he was in contract to make music especially involving projects that she was involved with, in contract with Sony Music which is home to some of the world's most distinguished record labels, including Columbia Records, RCA Records, Sony Nashville, Arista Records, and Epic Records, through which it contracts with its world-class recording artists. Oddly all named herein as involved.

66. Sony Music's current and former artists include Adele, Beyoncé, Billy Joel, Bruce Springsteen, Dolly Parton, Elvis, Future, Camila Cabello, Doja Cat, Johnny Cash, Justin Timberlake, Khalid, Lil Nas X, Luke Combs, Mariah Carey, Michael Jackson, Miley Cyrus, The Chainsmokers, Usher, Whitney Houston, and Yo- Yo Ma. And by and through others NIPSEY HUSSLE including NIPSEY HUSSLES SONGS WITH YASIN.

67. In addition to the well-known artists identified above, Sony Music invests heavily in signing and developing new artists, and in marketing and promoting their recordings. Sony Music generally invests on the front end of an artist's career— through advances, recording, marketing, creative services, promotion, and more— betting that it can help the artist, and the artist's recordings, achieve success. Sony Music might see a return on its investment if an artist's recordings are commercially successful. However, Sony Music's financial incentives to invest in artists and their music flow directly from the protections afforded by copyright. As does the ability of YASIN to realize a profit from her works with other artists. As such it seems that the there is copyright interest competitiveness between YASIN and the others such as SONY, EPIC, and ATLANTIC specifically such that they may be the reason why YASIN is denied her just due increasing the amount of the pie enjoyed by everyone else involved through deleting hers.

16

68. Sony Music exploits its sound recording copyrights through physical sales and digital distribution (such as downloads), as well as through licensing to third parties, and failure to honor obligations to participating artists from time to time thereby realizing a profit greater than agreed and different than agreed Licensing the use of sound recordings—including for use in internet-based media—is a substantial revenue driver for all music companies, including Sony Music, especially over the last decade and deprives contributors.

69. Sony Music has licensing agreements with many types of companies. For example, a license to Peloton allows it to use Sony Music's sound recordings to create themed fitness class videos. Sony Music has also licensed its sound recordings to various fitness apparel and accessories companies that compete with others including without limitation Nike and Under Armour, as well as to companies in related markets, often including the right to use the Sony Music content on the internet.

70. This is explained to fully demonstrate that Sony and all others in affiliation, and under Sony, understand fully the usefulness of Copyrights and the grounds for Honoring

## SPECIFIC ALLEGATION CONSOLIDATING THE ACTS INTO ONE FOR ALL AND ALL FOR ONE

71. All set forth above at 1 - 70 is incorporated herein below by reference as if set forth more fully at length herein.

72. On information and belief all of the Named Defendants jointly and Severally are creation, recording, distribution, and online retailer music powerhouse. All of the Consolidated Defendants accused and named at 1 Defendants 1-15 above has achieved its success by infringing sound recordings and musical compositions

belonging to a number of different content owners, including Plaintiffs' copyrighted sound recordings/property, on a massive scale.

73. All of the Consolidated Defendants accused and named at 1 Defendants 1-15 above has largely eschewed traditional advertising to a degree, relying instead upon promotion of their respective products and services by and through each other, at the street level in grassroots type marketing and mixtapes, social media sites, such as Instagram, TikTok, and Facebook, video releases, and the sensationalizing of his (NIPSEY HUSSLES) legacy in light of his early unfortunate passing and the violence surrounding it. Their primary use of these platforms is to post videos showing use of music products and works some of which have been inclusive of YASINS personal property at issue herein. These videos feature popular sound recordings as an integral part of the presentation.

74. While these social media "commercials"/videos have been instrumental to NIPSEY HUSSLES success, All of the Consolidated Defendants accused and named at 1 Defendants 1-15 above has not paid for the privilege to use the sound recordings that are featured in them inasmuch as some involved works for which YASIN has not yet been paid. As to Plaintiffs alone, All of the Consolidated Defendants accused and named at 1 Defendants 1-15 above has misappropriated most of the most popular and valuable sound recordings in the market by NIPSEY HUSSLE which in part belong to her, using those creative works to drive massive sales to All of the Consolidated Defendants accused and named at 1 Defendants 1-15 above without any compensation to Plaintiff These works include sound recordings featuring such chart-topping and award-winning artists as NIPSEY HUSSLE featuring Ms. Yasin and her artistic talents including writing, composition, performance style, and more.

75. Plaintiffs' investment in recorded music is protected by copyright law, which grants the copyright owner the exclusive right to, among other things, reproduce, distribute, and create derivative works of copyrighted works, and to publicly perform sound recordings by means of a digital audio transmission. An important portion of

Plaintiffs' return on their investment in recorded music, which they share with other recording artists such as NIPSEY HUSSLE, comes from licensing recordings and music videos to others who use Plaintiffs' works in videos, television shows, commercials, albums, and songs/samples and on social media, just as All of the Consolidated Defendants accused and named at 1 Defendants 1-15 above has done. Indeed, their joint and several use, enjoyment of, and profit from Plaintiffs' interest in sound recordings is precisely the type of commercial use upon which the Defendants together have built their robust respective lawyering, recording, distribution, promotions, and licensing business.

76. The Defendants joint and several conduct, acts, errors, and omissions explained herein, and in which they have jointly in a joint type venture taken and exploited Plaintiffs' valuable intellectual property without any compensation to Plaintiff, has caused Plaintiff substantial and irreparable harm.

77. Plaintiff brings this action to obtain redress for all of the named Defendants joint and several infringement of Plaintiffs' valuable rights and to prevent further violations of those rights going forward.

**COPYRIGHT INFRINGEMENT**
**COUNT I: COPYRIGHT INFRINGEMENT (AGAINST ALL DEFENDANTS)**

78. Plaintiffs incorporate paragraphs 1 through 77 of this Complaint as if fully set forth herein.

79. (copyright infringement/original works infringement) lawsuit only has to prove two elements: (a) **that the Claimant owns a copyright/original work and/or production, and (b) that the defendant(s) infringed it**.

80. To establish ownership of a valid copyright, a plaintiff must demonstrate that the work is original, and that it is subject to legal protection.

81. It is the allegation and accusation of Ms. Yasin, as well as complaint hereby, that the three basic elements of copyright: originality, creativity, and fixation attach to the works in question that are involved here and which the accused Defendants jointly and severally have appropriated and misappropriated to their joint and several benefit and to the loss and detriment of Ms. Yasin.

82. Defendants' creation, posting/reposting and/or the streaming of the All of the Consolidated Defendants accused and named at 1 Defendants 1-15 above Videos , albums, and songs infringes Plaintiffs' copyrights. Among other things, Defendants have unlawfully reproduced, prepared derivative works from, distributed, and/or publicly performed by means of a digital audio transmission the sound recordings listed on Exhibit A in violation of 17 U.S.C. § 106(1), (2), (3), and (6).

83. Defendants' acts of infringement are knowing, deliberate, and willful, and in utter disregard for Plaintiffs' rights.

84. As a direct and proximate result of Defendants' infringement of Plaintiffs' copyrights and exclusive rights under copyright, Plaintiffs are entitled to their actual damages, including Defendants' profits from infringement, in amounts to be proven at trial, pursuant to 17 U.S.C. § 504(b). In the alternative, at Plaintiffs' election pursuant to 17 U.S.C. § 504(c), Plaintiffs are entitled to the maximum statutory damages in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).

85. Plaintiffs are entitled to their costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

86. Defendants' conduct is causing, and, unless enjoined by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot be fully compensated or measured in money. Plaintiffs have no adequate remedy at law. Pursuant to 17

U.S.C. § 502, Plaintiffs are entitled to a preliminary injunction and a permanent injunction prohibiting the infringement of Plaintiffs' copyrights and exclusive rights under copyright.

87. On information and belief as the same constitutes personalty in the eyes of the law, and a part of her estate as such, she is personally harmed, injured, and reduced in person, property, and rights concurrently and the "use" was NOT "for purposes such as criticism, comment, news reporting, teaching" rendering them generally not protected from being deemed copyright infringement and a breach of intellectual property rights of the Plaintiff.

88. The Defendants were informed and it was thusly agreed in writing that any Defenses or objections not made known to Ms. Yasin upon her communication with them, which was a qualified inquiry by an owner of personal property, that assertion to the court of the Defenses and objections later will be that the Defendants jointly and severally had the opportunity to speak and waived that right opting instead to be bound in their silence.

89. It was further set forth, and on information and belief by that notice which stated the above in full, agreed that "…No statute of limitations is applicable as the last act was less than one year ago…". And indeed the last act, the payment of $100K and associated later breach in contract used to entice Ms. Yasin to NOT file her lawsuit sooner occurred less than one year ago.

**COUNT II: CONTRIBUTORY INFRINGEMENT (AGAINST ALL DEFENDANTS)**

90. Plaintiffs incorporate paragraphs 1 through 89 of this Complaint as if fully set forth herein.

91. (copyright infringement/original works infringement) lawsuit only has to prove two elements: (a) **that the Claimant owns a copyright/original work and/or production, and (b) that the defendant(s) infringed it**.

21

92. To establish ownership of a valid copyright, a plaintiff must demonstrate that the work is original, and that it is subject to legal protection.

93. It is the allegation and accusation of Ms. Yasin, as well as complaint hereby, that the three basic elements of copyright: originality, creativity, and fixation attach to the works in question that are involved here and which the accused Defendants jointly and severally have appropriated and misappropriated to their joint and several benefit and to the loss and detriment of Ms. Yasin.

94. As detailed above, third-party influencers who created All of the Consolidated Defendants accused and named at 1 Defendants 1-15 aboveVideos, albums, and songs have likewise infringed Plaintiffs' copyrights, and Defendants are liable contributory copyright infringers for the infringing acts of these influencers. Additionally or alternatively, Defendants are liable as contributory copyright infringers by making the All of the Consolidated Defendants accused and named at 1 Defendants 1-15 aboveVideos available to the users and subscribers of the social media platforms referenced above.

95. By promoting and/or assisting with the creation of the infringing All of the Consolidated Defendants accused and named at 1 Defendants 1-15 above Videos, albums, and songs and/or by causing them to be copied, made available, and transmitted over the social media platforms referenced above, Defendants materially contribute to the infringing reproduction, preparation of derivative works from, distribution, and/or public performance of the Sony Music sound recordings contained in the All of the Consolidated Defendants accused and named at 1 Defendants 1-15 aboveVideos, including but not limited to the works listed in Exhibit A. Defendants have actual and constructive knowledge of such infringement, including actual or constructive knowledge that no Sony Music-related entity has granted the rights to include Sony Music's sound recordings in such All of the Consolidated Defendants accused and named at 1 Defendants 1-15 aboveVideos. In addition, Defendants have induced such infringement, including by promoting

22

such infringement through the compensation paid to All of the Consolidated
Defendants accused and named at 1 Defendants 1-15 above Athletes and other
influencers, by reposting the infringing videos, albums, and songs and by calling out
infringing sound recordings used in the All of the Consolidated Defendants accused
and named at 1 Defendants 1-15 above Videos, albums, songs, and promotional
materials.

96. Defendants' acts of contributory infringement are knowing, deliberate, and willful,
and in utter disregard for Plaintiffs' rights.

97. As a direct and proximate result of Defendants' contributory infringement of
Plaintiffs' copyrights and exclusive rights under copyright, Plaintiffs are entitled to
their actual damages, including Defendants' profits from infringement, in amounts to
be proven at trial, pursuant to 17 U.S.C. § 504(b). In the alternative, at Plaintiffs'
election pursuant to 17 U.S.C. § 504(c), Plaintiffs are entitled to the maximum
statutory damages in the amount of $150,000 with respect to each work infringed, or
such other amounts as may be proper under 17 U.S.C. § 504(c).

98. Plaintiffs are entitled to their costs, including reasonable attorneys' fees, pursuant to
17 U.S.C. § 505.

99. Defendants' conduct is causing, and, unless enjoined by this Court, will continue to
cause Plaintiffs great and irreparable injury that cannot be fully compensated or
measured in money. Plaintiffs have no adequate remedy at law. Pursuant to 17
U.S.C. § 502, Plaintiffs are entitled to a preliminary injunction and a permanent
injunction prohibiting the contributory infringement of Plaintiffs' copyrights and
exclusive rights under copyright.

100. On information and belief as the same constitutes personalty in the eyes of the law,
and a part of her estate as such, she is personally harmed, injured, and reduced in
person, property, and rights concurrently and the "use" was NOT "for purposes such

as criticism, comment, news reporting, teaching" rendering them generally not protected from being deemed copyright infringement and a breach of intellectual property rights of the Plaintiff.

101. The Defendants were informed and it was thusly agreed in writing that any Defenses or objections not made known to Ms. Yasin upon her communication with them, which was a qualified inquiry by an owner of personal property, that assertion to the court of the Defenses and objections later will be that the Defendants jointly and severally had the opportunity to speak and waived that right opting instead to be bound in their silence.

102. It was further set forth, and on information and belief by that notice which stated the above in full, agreed that "…No statute of limitations is applicable as the last act was less than one year ago…". And indeed the last act, the payment of $100K and associated later breach in contract used to entice Ms. Yasin to NOT file her lawsuit sooner occurred less than one year ago.

## COUNT III: VICARIOUS INFRINGEMENT (AGAINST ALL DEFENDANTS)

103. Plaintiffs incorporate paragraphs 1 through 102 of this Complaint as if fully set forth herein.

104. (copyright infringement/original works infringement) lawsuit only has to prove two elements: (a) **that the Claimant owns a copyright/original work and/or production, and (b) that the defendant(s) infringed it**.

105. To establish ownership of a valid copyright, a plaintiff must demonstrate that the work is original, and that it is subject to legal protection.

106. It is the allegation and accusation of Ms. Yasin, as well as complaint hereby, that the three basic elements of copyright: originality, creativity, and fixation attach to the works in question that are involved here and which the accused Defendants jointly

and severally have appropriated and misappropriated to their joint and several benefit and to the loss and detriment of Ms. Yasin.

107. As detailed above, third-party influencers who created All of the Consolidated Defendants accused and named at 1 Defendants 1-15 above Videos and albums have likewise infringed Plaintiffs' copyrights, and Defendants are vicariously liable for the infringing acts of these influencers. Additionally or alternatively, Defendants are liable as vicarious copyright infringers by making the All of the Consolidated Defendants accused and named at 1 Defendants 1-15 above Videos, albums, and songs available to the users and subscribers of the social media platforms referenced above.

108. Defendants have and have exercised the right, ability, and authority to control and supervise the placement of All of the Consolidated Defendants accused and named at 1 Defendants 1-15 above Videos, albums, and songs on the social media platforms referenced above. Defendants also have the ability to remove All of the Consolidated Defendants accused and named at 1 Defendants 1-15 aboveVideos from each platform. Defendants receive a direct financial benefit from the infringing reproduction, preparation of derivative works from, distribution, and/or public performance of the Sony Music sound recordings contained in the All of the Consolidated Defendants accused and named at 1 Defendants 1-15 aboveVideos, including but not limited to the works listed in Exhibit A, including (among other financial benefits) increased brand recognition and product sales.

109. Defendants' acts of vicarious infringement are knowing, deliberate, and willful, and in utter disregard for Plaintiffs' rights.

110. As a direct and proximate result of Defendants' vicarious infringement of Plaintiffs' copyrights and exclusive rights under copyright, Plaintiffs are entitled to their actual damages, including Defendants' profits from infringement, in amounts to be proven at trial, pursuant to 17 U.S.C. § 504(b). In the alternative, at Plaintiffs' election

pursuant to 17 U.S.C. § 504(c), Plaintiffs are entitled to the maximum statutory damages in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).

111. Plaintiffs are entitled to their costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

112. Defendants' conduct is causing, and, unless enjoined by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot be fully compensated or measured in money. Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a preliminary injunction and a permanent injunction prohibiting the vicarious infringement of Plaintiffs' copyrights and exclusive rights under copyright.

113. On information and belief as the same constitutes personalty in the eyes of the law, and a part of her estate as such, she is personally harmed, injured, and reduced in person, property, and rights concurrently and the "use" was NOT "for purposes such as criticism, comment, news reporting, teaching" rendering them generally not protected from being deemed copyright infringement and a breach of intellectual property rights of the Plaintiff.

114. The Defendants were informed and it was thusly agreed in writing that any Defenses or objections not made known to Ms. Yasin upon her communication with them, which was a qualified inquiry by an owner of personal property, that assertion to the court of the Defenses and objections later will be that the Defendants jointly and severally had the opportunity to speak and waived that right opting instead to be bound in their silence.

115. It was further set forth, and on information and belief by that notice which stated the above in full, agreed that "…No statute of limitations is applicable as the last act was less than one year ago…". And indeed the last act, the payment of $100K and associated later breach in contract used to entice Ms. Yasin to NOT file her lawsuit sooner occurred less than one year ago.

**CONTRACT BREACH**

116. All set forth above in paragraphs 1 - 115 is incorporated herein below by reference as if set forth more fully at length herein below.

117. The original Contract between NIPSEY HUSSLE and TASLEEMA YASIN consisted of an unconditional promise to pay her for her contributions in accordance with performance and the overall compilation and collection of compilations that it became a part of in its entirety and all fruits of her participation brought forth by the work itself, its future performance, and performances of the pieces however she has been openly expressly and implicitly denied that and all fruits of the bargain that she struck and promises made to her by NIPSEY HUSSLE and this harm and injury is ongoing.

118. The Contract and agreement precipitated by her initial threat to bring legal action which occasioned her being provided $100K to compromise and settle her claims was breached by the failure of the parties promising to make her whole to give her the residual outstanding terms and conditions as promised and that time to do so has lapse and none have indicated any intention to honor the agreement in full since and in fact she has been ignored in her demands for specific performance even to the extent of declaring the $100K as good faith funds forfeited by the failure to honor all ancillary agreements for which it was tendered in stipulation to trigger contract.

**THEFT**

119. All set forth above at 1 - 118 is incorporated herein below by reference as if set forth more fully at length herein below.

120. By the above fats incorporated herein by reference on information and belief YASIN accuses that the accused parties jointly and severally have no intention of honoring her rights, interests, and intellectual property ownership such that it is taken, has value, she has not consented, and she has. In effect demanded its return and has been continuously ignored.

121. By the above facts incorporated herein by reference the Defendants have jointly and severally participated in taking the property, it has been placed beyond YASINS control and reach, and she has been deprived of the benefit of its use and fruits of its use and there is no articulable sign that the takers intend to return it or make her whole absent judicial involvement, intervention, or compulsion.

**CONVERSION**

122. All set forth above at 1 - 121 is incorporated herein below by reference as if set forth more fully at length herein below.

123. Under California law, the elements required to prove a claim of conversion are shown herein above at length and include: (a) the plaintiff's ownership or right to possession of the property copyright; (b) the defendant's joint and several conversion by a wrongful act or in a manner that is inconsistent with the plaintiff's property rights which has occurred on information and belief; and (c) resulting damages which are claimed herein and have been already agreed to some extent to exist, to be warranted, and which thereby are due and owing presently.

124. Plaintiff has not waived or forfeited, nor has there been accord and satisfaction.

125. On information and belief the Plaintiff has done no act that equates to accord or satisfaction, nor waiver, nor forfeit.

**PRAYER FOR RELIEF**

126. All set forth above at 1 - 125 is incorporated herein below by reference as if set forth more fully at length herein below.

127. WHEREFORE, Plaintiff prays for judgment against Defendants jointly and severally as follows:

A.  Grant the Plaintiff Discovery from the other side immediately to determine the extent and scope of the infringement, the losses in full, and all parties involved directly and indirectly against whom Plaintiff may have a right of recovery as to these matters;

B.  Review the transaction(s), Exhibits, Records, and parties and declare the rights, duties, and legal relations of the parties per 28 USC 2201 and 28 USC 2202 (The Declaratory Judgments Act) favorable to Plaintiff and Plaintiffs cause set forth herein;

C.  for a preliminary and permanent injunction requiring that Defendants, and their officers, agents, servants, employees, attorneys, and others in active concert or participation with each or any of them, cease infringing, or causing, enabling, facilitating, encouraging, promoting, inducing, and/or participating in the infringement of, any of Plaintiffs' copyrights, works, and intellectual property in any way as protected by the Copyright Act, whether now in existence or hereafter created predicated upon - in any way - the works at issue herein and any works in which they are embedded and upon which compilations and arrangements of compilations that they have any influence and involvement/placement in (albums included until resolved);

D.  for Plaintiffs' actual damages, actual and projected losses to date, and Defendants' profits from infringement, or $5,000,000.00 ($5 Million US) whichever is less.

E.  pursuant to 17 U.S.C. § 504(b), in amounts to be proven at trial, or, in the alternative, at Plaintiffs' election pursuant to 17 U.S.C. § 504(c), for statutory damages up to the maximum amount of $150,000 per infringed work, or such other amounts as may be proper under 17 U.S.C. § 504(c).

F.  for Plaintiffs' costs, including reasonable attorneys' fees/preparation and Litigation expenses, pursuant to 17 U.S.C. §§ 505 and 1203(b)(4), (5) and otherwise;

G. for prejudgment and post-judgment interest; and

H. for such other and further relief as the Court may deem just and proper.

I. All set forth herein above and below incorporated by attachment is sworn true, correct, and complete, and/or correct copies of originals, under 28 USC 1746 and State of California Penalties for perjury as of the Plaintiffs own personal first-hand knowledge except where information and belief are expressed as the source of necessarily implied by operation of the contextual considerations.

Date: ~~November~~ DEC 1 _____, 2022

Duly Presented in Good Faith,

/s/_x _____ [L.S./SEAL]
TASLEEMA YASIN
PO Box 6009
BURBANK, CA. 91510
poss.pen.classaction@gmail.com
t.yasin.poss.pen@gmail.com
[Send all correspondence by Accountable Means]

~~NOTARY ACKNOWLEDGEMENT~~

NOTARY SIGNATURE                    DATE                    [NOTARY SEAL]

# EXHIBIT B

VIA CERTIFIED MAIL RRR  10/12/22

DEMAND FOR PAYMENT AND SETTLEMENT ON ACCOUNT AND NOTICE OF INTENT TO SUE FOR BREACH OF CONTRACT, CONVERSION, and COPYRIGHT INFRINGEMENT (TO BE FILED IN LA COUNTY US DISTRICT COURT AS POSS CLASS ACTION CERT.)

FROM:
TASLEEMA YASIN
PO Box 6009
BURBANK, CA. 91510
poss.pen.classaction@gmail.com
t.yasin.poss.pen@gmail.com
[Send all correspondence by Accountable Means]


TO:

ESTATE OF
Ermias "Nipsey Hussle" Asgehedom
Samiel "blacc Sam" Asghedom
15821 Ventura Blvd Ste 370, Encino, CA 91436


Steven " Steve O  Carless
(Nipsey's Manager)
519 Hory St, Roselle, NJ 07203

Hank Fortener
(agent at ROC Nation/ Samiel's Manager)
540 West 26th Street, New York, NY 10001

953 North Sycamore Ave, Los Angeles, California 90038

Sacks, Glazier, Franklin & Lodise LLP
(Firm who represents Samiel)
350 S Grand Ave #3500, Los Angeles, CA 90071

Terrance M Franklin
(Samiel's probate attorney)
350 S Grand Ave #3500, Los Angeles, CA 90071

Sedlmayr and associates, P.C
(Firm representing All Money In/ Nipsey's estate)
489 5th Ave, New York, NY 10017


Sebastian Zar and Theo Sedlmeyr
(Nipsey and Sam's music attorney)
489 5th Ave, New York, NY 10017

BARTON KLUNGMAN & OWTTING LLP
(Probate representation for Nipsey's Estate)
350 S Grand Ave #2200, Los Angeles, CA 90071


Jeffery b Harris, Christopher Higashi
(Nipsey Estate attorneys)
350 South Grand Avenue
Suite 2200
Los Angeles, CA 90071

All Money In
(Nipsey's label ran by Samiel)
15821 VENTURA BLVD SUITE 370
ENCINO, CA 91436


Atlantic Records
(Song: Hussle and Motivate - released as a single)
1290 Avenue Of The Americas
New YorkNY10104


Epic
(Song: Hussle In The House - released as a single)

9830 Wilshire Boulevard Beverly Hills, CA 90212
(310) 272-2555



SONY Music Entertainment and
DBA SONY ATV Music Publishing
(Nipsey's family and/or Estate sold Nipsey's catalog to Sony)

25 Madison Ave, New York, NY 10010

Epic
(Song: Hussle In The House - released as a single)
SONY Music Entertainment and
DBA SONY ATV Music Publishing
(Nipsey's family and/or Estate sold Nipsey's catalog to Sony)

CC: ASCAP REGARDING COPYRIGHT INFRINGEMENTS
CC: SONY (ATV) PUBLISHING
CC: PHayes@bloomberglaw.com

RE: All money from song one, on the masters millions were made, a movie was
involved, opportunities were missed, credit for the key role played and participation,
(FOUR SONGS INVOLVED: HUSTLE AND MOTIVATE, RICH ROLL, GOTTA TAKE IT
FEAT. LLOYD, HUSTLE IN THE HOUSE).

ASCAP (PUBLISHING COMPANY, INDIVIDUAL PUBLISHING RIGHTS).

DEMAND IS MADE HEREIN FOR COMPENSATION FOR THE ROLE OF TASLEEMA
YASIN (TAZ) AND HER RIGHTS IN THE ABOVE AND BELOW REFERENCED
ORIGINAL COMPILATIONS FOR WHICH SHE HAS NEVER BEEN COMPENSATED.

THE DEMAND OFFER TO SETTLE IS FOR $5 MILLION US TO SETTLE ALL CLAIMS
ACROSS ALL VENUES OUT OF COURT ASAP. The acts done include and are not
limited to all, some, or interchanging parties named herein together and apart
benefitting to the exclusion of the copyright owner the exercising, without permission or
legal authority, one or more of the exclusive rights granted to the copyright owner under
section 106 of the Copyright Act (Title 17 of the United States Code). These rights
include the right to reproduce or distribute a copyrighted work. In the file-sharing
context, downloading or uploading substantial parts of a copyrighted work without
authority constitutes an infringement.

They came to the table with $100K and all payments from song one from the time of
commencement and on the masters side from song one (10%) including the other 3
songs (all pursuant to the same deal). The data on all platforms was supposed to be
changed. And many other things were promised pursuant to an agreement to settle out
of court (See redacted abstract annexed). Those things were never delivered. Ms. Yasin
received a 100K check and then the subsequent acts and contract obligations to agreed
in the settlement for all parties never occurred. She made several verbal and written
demands. None have been honored to date. As such she deems the $100K as "Good
faith" money to be adjusted against the balance to be paid within the contract for
settlement terms and conditions. Having never been paid to date, she deems the same

forfeited. As agreed by the parties implicitly of course and expressly to get Tasleema to contract with them and take them serious, abandoning the pursuit of her claims against all jointly and severally, Good faith money in this context was a deposit of money into an account or delivered to Tasleema by a representative of the other side of the dispute to show that they have the intention of completing the deal to compromise and settle matters. It was unconscionable all things considered, but at the time Tasleema deemed the deal a something is better than nothing solution to the problem.  Good faith money is often later applied to the purchase but **may be non-refundable if the deal does not go through**. Here it is non-refundable and Yasin never accepted the partial payment in satisfaction of the entire debt.  The remainder of the Demand is first person as set forth by Ms. Yasin:

I have included some excerpts below which demonstrate that the obligation has been confessed to date in manners which I feel strongly that a Court will uphold and enforce. And within such time periods that the rights and duties remain enforceable. I claim damages at not less than $7.5 Million.  I offer at this time an opportunity for settlement in the amount of $5 Million US. In exchange I will waive all other claims and consider the matters resolved and myself paid in full for my services and compensated for all lost possibilities, opportunities, recognition, good name, and residual collateral benefits which would have flowed from it being admitted sooner that I was in fact involved and had I been paid appropriately for that involvement in consideration of performance under the totality of the circumstances during and after the death of the Artist Nipsey Hussle.

This offer of settlement within this notice of intent to sue and demand for payment is inclusive of all contingency loss that I have taken by virtue of being alienated from projects that I was very much an integral part of and which were the better performing works in fact.  If we cannot come to a negotiated settlement this is due notification to you that I will lodge suit in the US District Court for full recovery and all damages allowable by law and equity.  Be advised that your reaction or lack of reaction hereto will give color to the acts that have transpired to date.

Bear in mind that this has unstated value in that the same gripe expressed here is the gripe of numerous artists that have not been paid for their works and contributions to date. Should this case become public it could invite a mass outpouring of other slighted artists who have been mistreated similarly.

I wish to remind you, though I know that I don't have to, that as the plaintiff in a personal property intellectual ownership infringement case (copyright infringement/original works infringement) lawsuit only has to prove two elements: (a) **that I own a copyright/ original work and/or production, and (b) that the defendant (you folks) infringed it**. To establish ownership of a valid copyright, a plaintiff must demonstrate that the work is original, and that it is subject to legal protection. It is my allegation and accusation, as well as complaint hereby, that the three basic elements of copyright: originality, creativity, and fixation attach to the works in question that are involved here and which you folks jointly and severally it would seem have appropriated and misappropriated in

fact to your benefit and to my loss and detriment.  As the same constitutes personalty in the eyes of the law, and a part of my estate as such, I am personally harmed, injured, and reduced in person, property, and rights concurrently and your use was NOT "for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright."

Thank you in advance for your indulgence and prompt serious consideration, I remain available for necessary conversations, nothing is waived to date and all rights are reserved. After 20 days this offer of the opportunity to reach quiet out of court settlement shall be deemed refused by any and all who do not initiate conversation with me which is obviously indication of the refusal and denial of the legal duty claimed to be upon you hereby and the legal rights that I possess referenced herein to be made whole. Likewise if your joint and several, or individual, claim of defense to the claims against you are not made known assertion to the court will be that you had the opportunity to speak and waived that right opting instead to be bound to your silence until after my record in this private self-help process has closed.  No statute of limitations is applicable as the last act was less than one year ago.

I include below for your consideration the law, I do not seek criminal sanctions nor do I deem them to apply however intent is shown by attempts made to resolve which I would seriously urge. I have every faith that we will be able to reach amicable well reasoned resolution which will be a win-win for all involved and restore equity and fairness to the transaction which seems to suggest that the companies and entities involved do not look toward equal treatment, equity, diversity, or inclusion when it comes to seeing that contracts and obligations entered into are honored.

Duly Presented in Good Faith,


                              [L.S./SEAL]

TASLEEMA YASIN
PO Box 6009
BURBANK, CA. 91510
poss.pen.classaction@gmail.com
t.yasin.poss.pen@gmail.com
[Send all correspondence by Accountable Means]


CC/BCC

## 502. Remedies for infringement: Injunctions

(a) Any court having jurisdiction of a civil action arising under this title may, subject to the provisions of section 1498 of title 28, grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright.

(b) Any such injunction may be served anywhere in the United States on the person enjoined; it shall be operative throughout the United States and shall be enforceable, by proceedings in contempt or otherwise, by any United States court having jurisdiction of that person. The clerk of the court granting the injunction shall, when requested by any other court in which enforcement of the injunction is sought, transmit promptly to the other court a certified copy of all the papers in the case on file in such clerk's office.

## 503. Remedies for infringement: Impounding and disposition of infringing articles4

(a)(1) At any time while an action under this title is pending, the court may order the impounding, on such terms as it may deem reasonable—

(A) of all copies or phonorecords claimed to have been made or used in violation of the exclusive right of the copyright owner;

(B) of all plates, molds, matrices, masters, tapes, film negatives, or other articles by means of which such copies or phonorecords may be reproduced; and

(C) of records documenting the manufacture, sale, or receipt of things involved in any such violation, provided that any records seized under this subparagraph shall be taken into the custody of the court.

(2) For impoundments of records ordered under paragraph (1)(C), the court shall enter an appropriate protective order with respect to discovery and use of any records or information that has been impounded. The protective order shall provide for appropriate

procedures to ensure that confidential, private, proprietary, or privileged information contained in such records is not improperly disclosed or used.

(3) The relevant provisions of paragraphs (2) through (11) of section 34(d) of the Trademark Act (15 U.S.C. 1116(d)(2) through (11)) shall extend to any impoundment of records ordered under paragraph (1)(C) that is based upon an ex parte application, notwithstanding the provisions of rule 65 of the Federal Rules of Civil Procedure. Any references in paragraphs (2) through (11) of section 34(d) of the Trademark Act to section 32 of such Act shall be read as references to section 501 of this title, and references to use of a counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services shall be read as references to infringement of a copyright.

(b) As part of a final judgment or decree, the court may order the destruction or other reasonable disposition of all copies or phonorecords found to have been made or used in violation of the copyright owner's exclusive rights, and of all plates, molds, matrices, masters, tapes, film negatives, or other articles by means of which such copies or phonorecords may be reproduced.

## 504. Remedies for infringement: Damages and profits5

(a) In General.—Except as otherwise provided by this title, an infringer of copyright is liable for either—

(1) the copyright owner's actual damages and any additional profits of the infringer, as provided by subsection (b); or

(2) statutory damages, as provided by subsection (c).

(b) Actual Damages and Profits.—The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work.

(c) Statutory Damages.—

(1) Except as provided by clause (2) of this subsection, the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are li-able jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just. For the purposes of this subsection, all the parts of a compilation or derivative work constitute one work.

(2) In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000. In a case where the infringer sustains the burden of proving, and the court finds, that such infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright, the court in its discretion may reduce the award of statutory damages to a sum of not less than $200. The court shall remit statutory damages in any case where an infringer believed and had reasonable grounds for believing that his or her use of the copyrighted work was a fair use under section 107, if the infringer was: (i) an employee or agent of a nonprofit educational institution, library, or archives acting within the scope of his or her employment who, or such institution, library, or archives itself, which infringed by reproducing the work in copies or phonorecords; or (ii) a public broadcasting entity which or a person who, as a regular part of the nonprofit activities of a public broadcasting entity (as defined in section 118(f )) infringed by performing a published nondramatic literary work or by reproducing a transmission program embodying a performance of such a work.

(3) (A) In a case of infringement, it shall be a rebuttable presumption that the infringement was committed willfully for purposes of determining relief if the violator, or a person acting in concert with the violator, knowingly provided or knowingly caused to be provided materially false contact information to a domain name registrar, domain name registry, or other domain name registration authority in registering, maintaining, or renewing a domain name used in connection with the infringement.

(B) Nothing in this paragraph limits what may be considered willful infringement under this subsection.

(C) For purposes of this paragraph, the term "domain name" has the meaning given that term in section 45 of the Act entitled "An Act to provide for the registration and protection of trademarks used in commerce, to carry out the provisions of certain international conventions, and for other purposes" approved July 5, 1946 (commonly referred to as the "Trademark Act of 1946"; 15 U .S .C . 1127).

(d) Additional Damages in Certain Cases.—In any case in which the court finds that a defendant proprietor of an establishment who claims as a defense that its activities were exempt under section 110(5) did not have reasonable grounds to believe that its use of a copyrighted work was exempt under such section, the plaintiff shall be entitled to, in addition to any award of damages under this section, an additional award of two times the amount of the license fee that the proprietor of the establishment concerned should have paid the plaintiff for such use during the preceding period of up to 3 years.

## 505. Remedies for infringement: Costs and attorney's fees

In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

## 506. Criminal offenses6

(a) Criminal Infringement.—

(1) In general.—Any person who willfully infringes a copyright shall be punished as provided under section 2319 of title 18, if the infringement was committed—

(A) for purposes of commercial advantage or private financial gain;

(B) by the reproduction or distribution, including by electronic means, during any 180-day period, of 1 or more copies or phonorecords of 1 or more copyrighted works, which have a total retail value of more than $1,000; or

(C) by the distribution of a work being prepared for commercial distribution, by making it available on a computer network accessible to members of the public, if such person knew or should have known that the work was intended for commercial distribution.

(2) Evidence.—For purposes of this subsection, evidence of reproduction or distribution of a copyrighted work, by itself, shall not be sufficient to establish willful infringement of a copyright.

(3) Definition.—In this subsection, the term "work being prepared for commercial distribution" means—

(A) a computer program, a musical work, a motion picture or other audiovisual work, or a sound recording, if, at the time of unauthorized distribution—

(i) the copyright owner has a reasonable expectation of commercial distribution; and

(ii) the copies or phonorecords of the work have not been commercially distributed; or

(B) a motion picture, if, at the time of unauthorized distribution, the motion picture—

(i) has been made available for viewing in a motion picture exhibition facility; and

(ii) has not been made available in copies for sale to the general public in the United States in a format intended to permit viewing outside a motion picture exhibition facility.

(b) Forfeiture, Destruction, and Restitution.—Forfeiture, destruction, and restitution relating to this section shall be subject to section 2323 of title 18, to the extent provided in that section, in addition to any other similar remedies provided by law.

(c) Fraudulent Copyright Notice.—Any person who, with fraudulent intent, places on any article a notice of copyright or words of the same purport that such person knows to be false, or who, with fraudulent intent, publicly distributes or imports for public distribution any article bearing such notice or words that such person knows to be false, shall be fined not more than $2,500.

(d) Fraudulent Removal of Copyright Notice.—Any person who, with fraudulent intent, removes or alters any notice of copyright appearing on a copy of a copyrighted work shall be fined not more than $2,500.

(e) False Representation.—Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

(f) Rights of Attribution and Integrity.—Nothing in this section applies to infringement of the rights conferred by section 106A(a).

## 507. Limitations on actions7

(a) Criminal Proceedings.—Except as expressly provided otherwise in this title, no criminal proceeding shall be maintained under the provisions of this title unless it is commenced within 5 years after the cause of action arose.

(b) Civil Actions.—No civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued.

## 508. Notification of filing and determination of actions

(a) Within one month after the filing of any action under this title, the clerks of the courts of the United States shall send written notification to the Register of Copyrights setting forth, as far as is shown by the papers filed in the court, the names and addresses of the parties and the title, author, and registration number of each work involved in the action. If any other copyrighted work is later included in the action by amendment, answer, or other pleading, the clerk shall also send a notification concerning it to the Register within one month after the pleading is filed.

(b) Within one month after any final order or judgment is issued in the case, the clerk of the court shall notify the Register of it, sending with the notification a copy of the order or judgment together with the written opinion, if any, of the court.

(c) Upon receiving the notifications specified in this section, the Register shall make them a part of the public records of the Copyright Office.

(iii)   In the event that a licensee shall refuse to pay Contributor's Master Shares directly to Contributor, Company shall pay Contributor's Master Use Shares to Contributor with no reductions, deductions, commissions, prorations or otherwise, within five (5) business days of Company's actual receipt of any such fees;

(iv)   Company shall, within sixty (60) days of the date of the full execution of this Agreement, provide Contributor with a full accounting and payment of Contributor's Master Use Shares revenues heretofore directly collected by or on behalf of Company retroactive to the date of the first exploitation.

(c)   within thirty (30) business days of signature of this Agreement by Contributor, full correction of credits in metadata and digital service providers (and, prospectively, in packaging, promotional materials, neighboring rights registrations (if applicable), and label copy) to reflect Contributor's featured artist status on the Masters, as follows: "Featuring Tasleema". This shall include any corrections in the misspelling of Contributor's name (i.e., "Tasleema").

(i)   Further to the foregoing, as a credited featured artist on the Masters, Contributor shall have the full right title and interest to be paid a proportional share of "Featured Artist Royalties" (equal to Contributor's share in each Composition) payable by public performance and neighboring rights organizations such as SoundExchange, including without limitation the irrevocable right to register such prorated shares in her own name and directly collect income derived therefrom (including that income collected prior to the Commencement Date); Company shall use all reasonable business efforts to revise the applicable repertoire splits which may have been previously registered by Company or on Company and/or Artist's behalf to reflect Contributor's shares therein. In the event that Company or Artist, or anyone on Company or Artist's behalf, shall inadvertently receive or be credited with any of Contributor's Featured Artist fees becoming payable following the Commencement Date hereof, Company shall be obligated to pay Contributor's fees to Contributor within thirty (30) days of receipt/credit thereof. Company shall within ninety (90) days of the date of the full execution of this Agreement, provide Contributor with a full accounting and payment of Contributor's share of the revenues theretofore collected by Company derived from public performance and neighboring rights organizations such as SoundExchange.

(ii)   Company shall also ensure, within thirty (30) days of the full execution of this Agreement, that corrected songwriting/publishing credits to reflect your writer, publisher and PRO information on all metadata, chyrons, packaging, promotional materials, neighboring rights registrations, label information, and other reasonably requested corrections, as may be directed in writing by Contributor are provided to DSPs, agencies, societies, record labels, publishers or otherwise (both categories of updated credits, collectively "**Contributor's Credits**"), and Company shall provide written documentation of such corrections to Contributor:

(d)   In addition, on a going forward basis starting from the Commencement Date, Company shall pay to Contributor an amount equal to ten percent (10%) of all revenues received by Artist in connection with the subject Masters including, without limitation from sales, downloads, streaming, prorated advances, promotions and premiums.

(e)   The date which is the date of Contributor's receipt of all Fees may be referred to as the "**Effective Date**".

(f)   (i)   Upon the execution of this Agreement and payment to Contributor of the consideration set forth in paragraph 3(a) above, Contributor shall withdraw from its probate claim against the Artist/decedent, Case No. 19STPB04407 (the "Probate Claim") and promptly sign any reasonable paperwork (e.g., Withdrawal and Release of Creditor's Claim) presented in order to effectuate that withdrawal to be prepared and filed by Artist's Estate. In connection with said Probate Claim,

4

T.Y.

Company agrees to pay, on a non-recoupable basis, certain attorney's fees incurred by Contributor, on Contributor's behalf, in the amount of Ten Thousand Dollars ($10,000) as a check payable to: Johnson & Johnson, LLP, Attn. Daniel Lifschitz, Esq. ("Your Attorney").   As an additional accommodation, Company shall remit said check for the set forth attorney's fees payment directly to you for disposition to Your Attorney.  Company's compliance with this authorization will constitute an accommodation solely to you alone; Your Attorney is not a beneficiary of such authorization or of this agreement. All payments to Your Attorney under this agreement will constitute payment to you and Company will not have any liability whatsoever by reason of any erroneous payment or failure to comply with this authorization. You will indemnify and hold Company harmless against any claims asserted against Company and any damages, losses or expenses incurred by reason of any such payment or otherwise in connection herewith. Moreover, the existence and nature of the settlement terms, between Company and Contributor, as to all the Masters and Compositions which are the subject of this Agreement, shall be kept strictly confidential.

     (ii) Dismissal with Prejudice.  Within five business days after receipt of the consideration provided in paragraph 3(a), above, you shall cause to be executed and filed a dismissal with prejudice of your pending federal complaint.

     (iii) Retention of Jurisdiction.  The Parties agree that the Probate Court shall retain jurisdiction over the Parties in connection with the enforcement of this settlement.

## 3A. Accounting

 (a)  Accountings as to royalties payable hereunder shall be made semi-annually by Company to you, within sixty (60) days following receipt by Company of such semi-annual accounting from its distributor (if applicable) together with the payment of accrued royalties, if any, earned by you during such preceding half-year period after deduction of any permissible deductions.  All royalty statements and all other accountings rendered by Company to you shall be binding upon you and not subject to any objection by you for any reason unless specific objection in writing, stating the basis thereof, is given to Company within eighteen (18) months from the date rendered. You, shall be foreclosed from maintaining any action, claim or proceeding against Company in any forum or tribunal with respect to any statement or accounting due hereunder unless such action, claim or proceeding is commenced against Company in a court of competent jurisdiction within eighteen (18) months after the date such statement or accounting is rendered. You shall have the right to appoint a Certified Public Accountant who is not then currently engaged in an outstanding audit of Company, to examine Company's books and records relating solely to the exploitation of the Masters hereunder (but excluding any books and records relating to the manufacture of records) provided that such examination shall take place at Company's offices during normal business hours, on reasonable prior written notice. Such examination may be conducted only once with respect to a particular statement and only within eighteen (18) months after the date such statement is rendered. You shall cause your accountant to deliver a true copy of accountant's examination of Company's books and records to Company, within thirty (30) days after completion of the applicable audit.   You will have no right to audit the books and records of Company's distributor(s). If Company conducts an audit of its distributors books and records pertaining in whole or in part to the Masters, you shall be entitled to receive your pro-rata share of any net recovery pertaining solely to the Masters (i.e., your pro-rata share of: the gross recovery less out-of-pocket third party audit costs incurred by Company) actually received by Company.

 (b)  You acknowledge and agree that those of Company's books and records concerning the reproduction or other exploitation of the Masters might consist only of accounting statements received by Company from its distributor (which statements Company may redact to omit information not germane to royalties to be paid or credited to you) and that neither Company nor Artist shall be responsible for any errors or omissions contained in any such accounting statements rendered to Company by its distributor.

T.Y.

5

claims of whatever kind and nature and any and all claims in any way relating to or arising out of the Claims, as set forth herein, which claims accrued prior to the Commencement Date, but excluding any claims to enforce the terms of this Agreement. Within ten (10) business days following the Effective Date, Contributor shall execute such documents as are provided by Company and may be required to lift/vacate/dismiss or otherwise remove any creditors' claim(s) filed by Contributor or on behalf of Contributor in the probate courts governing Artist's Estate, in order to fully effectuate Contributors' releases herein.  This Agreement specifically includes, without limiting the foregoing general terms, all claims, whether known or unknown and whether foreseen or unforeseen, arising from or relating in any way to the claims, as set forth herein, as well as any and all claims for damages, costs, and attorneys' fees and any other claim which could be asserted by you in any suit, grievance, claim, or charge against Company, its successors, purchasers, assigns, and the agents, or employees of Company, for or on account of any matter or thing whatsoever relating to the claims, up to and including the later of (i) the Effective Date and (ii) the present time of execution hereof.  Further to the foregoing, Contributor shall execute the Schedule C Satisfaction and Release attached hereto, which Schedule C is hereby ratified and incorporated by reference.

(b)    Company hereby unconditionally settles, releases, compromises, reaches accord and satisfaction, waives, remises, discharges, and acquits Contributor and the respective agents, attorneys, and the successors and assigns of Contributor, for each, every, and all actions, causes of action, liabilities, claims, damages, and expenses of whatever kind and nature, including but not limited to any and all costs and attorneys' fees, which they had or now have and all known and unknown and reasonably anticipated claims of whatever kind and nature and any and all claims in any way relating to or arising out of the Claims, as set forth herein, which claims accrued prior to the Commencement Date, but excluding any claims to enforce the terms of this Agreement.

(c)    In furtherance of the releases set forth herein, Each Party hereby (i) acknowledges that it may later discover facts different from or in addition to those that it now knows or believes to be true with respect to the claims released hereunder; (ii) agrees that, in such event, the releases herein shall nevertheless remain effective in all respects, notwithstanding such different or additional facts or the discovery of those facts; (iii) agrees that all rights under Section 1542 of the California Civil Code and any similar law of any state or U.S. territory, any similar federal law, or any similar common law or principle of similar effect, are hereby expressly waived; and (iv) acknowledges that such Party is aware of, has read, and understands that said section reads as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

(d)    Each Party acknowledges that it may hereafter discover claims in addition to the ones released in this Agreement that relate to the Claims, as set forth herein, and hereby releases the other Party from any such unknown and/or unsuspected claims, subject to the foregoing limitation.

6.    Notwithstanding Section 1542 of the California Civil Code, this Agreement shall constitute a full release of each Party's obligations regarding the Claims, as set forth herein, in accordance with its terms. Each Party knowingly and voluntarily waives the provisions of Section 1542, as well as any other statute, law, or rule of similar effect, and acknowledges and agrees that this waiver is an essential and material term of this Agreement and the settlement which leads to it, and without such waiver the settlement would not have been accepted. Each Party hereby represents that it has been advised by legal counsel or has been given ample opportunity to be so advised and understands and acknowledges the significance and consequences of this Agreement and of the specific waiver of Section 1542 and other such laws.

7

T.Y.

**7.     No Admission**. This Agreement shall not be deemed an admission by any Party of any claims or allegations made against any Party, and no rights shall inure to any third party from the obligations, representations and agreements of the Parties herein. By entering into this Agreement, it is expressly understood that no Party is in any way admitting liability or wrongdoing of any sort and this Agreement does not constitute an admission of liability or wrongdoing of any kind.

**8.     Confidentiality/Non-Disparagement**. The Parties agree that, other than the minimum disclosures reasonably possible to effectuate the purpose of the following communications:

     (a)     as required by law;

     (b)     in any action to enforce any of the terms of this Agreement;

     (c)     for legal/administration purposes (e.g., registering/altering publishing shares, notifying licensees of Contributor's Master Use Share, updating credits/metadata); or

     (d)     by mutual written agreement (e.g., press release);

Neither the terms of this Agreement nor any disparaging comments relating to the other Party shall be published or communicated to others, and each Party shall prevent their attorneys, managers, accountants, label and publishing representatives, family members, estate administrators, publicists or others, directly or indirectly from publishing or communicating either of the foregoing. Communications which imply that one Party prevailed over the other Party in connection with the disputes and differences which are the subject of this Agreement shall be presumed disparaging; provided always that making a truthful statement that a mutually agreeable understanding was reached shall be permissible.

     (e)     It is agreed that any third-party subpoenas for production of Company's business records relating to the financial terms of this Agreement as pertaining to Contributor's revenues shall be strictly construed by Company and Company shall promptly inform Contributor, in writing, of the existence of such discovery request so that Contributor has the opportunity to object to or move to narrow the scope of such production.

     (f)     Any Press Releases following the execution of this Agreement shall be mutually approved by the Parties hereto.

**9.     Governing Law, Forum Selection, and Dispute Resolution**. The Parties agree that California law shall govern the construction and interpretation of this Agreement, without regard to conflict or choice of law principles. The Parties further agree that all actions or proceedings arising directly or indirectly from this Agreement shall be arbitrated or litigated before arbitrators or in courts having a situs within Los Angeles County, California, and hereby consent to the jurisdiction of any local, state or federal court in which such an action is commenced that is located in Los Angeles County, California, agree not to disturb or object to such choice of forum, waive the personal service of any and all process upon them, and consent that all such service of process may be made by certified or registered mail, return receipt requested, addressed to the Parties at their respective addresses set forth above.   The respective addresses of Company and you for all purposes of this agreement shall be as set forth above until notice of a new address shall be duly given.  Any notice desired or required to be given by either party to the other shall be in writing and shall be delivered by Federal Express or similar overnight courier with proof of delivery or sent by United States certified mail, postage prepaid, return receipt requested, provided that any royalty statement may be sent by regular mail.  Properly addressed notices delivered or sent as provided herein shall be deemed given when delivered with proof of delivery, or five (5) days after postmarked if delivered by mail.

8

10.      **Attorneys' Fees.** Except as expressly set forth in paragraph 3(f) above, the Parties agree that each will bear its own attorneys' fees, expenses and costs incurred in connection with the preparation of this Agreement. If a Party incurs any expense, including reasonable attorneys' fees, in connection with any action or proceeding arising out of a breach or default of this Agreement, the prevailing Party in such action or proceeding shall be entitled to recover reasonable attorneys' fees, costs and expenses actually incurred in enforcing compliance with this Agreement.

11.      **Successors and Assigns.** The provisions of this Agreement shall be deemed to obligate, extend and inure to the benefit of the predecessors, successors, assigns, transferees, grantees and heirs of each of the Parties hereto; provided that Company shall always remain primarily liable for performing its obligations hereunder.

12.  **Severability.** Should any provision of this Agreement be declared or determined by a court or arbitrator to be illegal, invalid, or waived, the validity of the remaining parts, terms or provisions of this Agreement shall not be affected.

13.      **Entire Agreement.** This Agreement constitutes and embodies the entire understanding and agreement of the Parties hereto and supersedes any prior oral or written agreements and, except as otherwise provided hereunder, there are no other agreements or understandings, written, oral or otherwise, in effect between Company, on the one hand, and Contributor, on the other. Any and all prior discussions, negotiations, commitments, representations, or understandings, written or otherwise, express or implied, relating to the entire subject matter hereof, or any part thereof between Company, on the one hand, and Contributor, on the other, if any, are hereby merged within. The Parties hereby agree that this Agreement has been negotiated with the use of each Party's respective counsel to the extent desired and no ambiguities exist. The Parties further agree that in the event of any dispute as to any of the terms of the Agreement, no parole or extrinsic evidence will be admissible. Any waiver, alteration or modification of any of the terms of this Agreement shall be valid only if made in writing and signed by Company, on the one hand, and Contributor, on the other.

14. **Counterparts.** This Agreement may be executed in counterparts and each Party's signature on at least one such counterpart will make this Agreement effective for the signing party. The Parties affirm and agree that the signature of a Party hereto conveyed by telecopier or other electronic means will be as valid and binding as if it were an original signature.

**ACCEPTED AND AGREED:**

COMPANY
**All Money In LLC**

_____

Signature Redacted

Tasleema Yasin d/b/a Chop Suey Music Publishing
LLC

T.Y.

9

<u>ACKNOWLEDGEMENT</u>

STATE OF California
              ) ss.:
COUNTY OF Los Angeles )

On March 8, 2022 _____, before me personally came TASLEEMA YASIN, known to me to be the individuals described in and who executed the foregoing instrument, and acknowledged to me that she executed it.

_____
Notary Public

State of California, County of Los Angeles
Subscribed and sworn to (or affirmed) before me on this 8 day
of March 2022 by Tasleema Yasin
proved to me on the basis of satisfactory evidence to be the
person(s) who appeared before me.

Signature _____ (seal)

MIGUEL A. VELIZ
Commission No. 2303017
NOTARY PUBLIC-CALIFORNIA
LOS ANGELES COUNTY
My Comm. Expires NOVEMBER 1, 2023

T.Y.

10

47

SCHEDULE A

TO THE AGREEMENT DATED AS OF JANUARY 1, 2022 BETWEEN ALL MONEY IN LLC AND
TASLEEMA YASIN d/b/a CHOP SUEY MUSIC PUBLISHING LLC
LETTER OF DIRECTION

**All Money In LLC**
c/o Sedlmayr & Associates, P.C.
489 Fifth Avenue, 30th Floor
New York, New York 10017

**RE: CORRECTION OF PUBLISHING SPLITS/ASSIGNMENT OF COPYRIGHT**

To Whom It May Concern:

On behalf of All Money In LLC, the Estate of recording artist and songwriter Ermias Joseph Asghedom, professionally known as "Nipsey Hussle" ("Artist"), and all publishing designees for Artist, please be on notice that the following copyright ownership and administration shares in the four (4) below compositions, from inception of their respective creation, shall be entirely the property of Tasleema Yasin and her heirs, assigns and designees ("**Yasin**") in perpetuity, throughout the world, free of any claim whatsoever by us, other writers, other publishers, other administrators, societies, agencies or otherwise, and by any and all persons deriving any rights or interests therefrom:

**Hussle in the House 5%**
**Gotta Take It 15%**
**Rich Roll 10%**
**Hussle & Motivate 10%**

(Individually and collectively, "**Yasin's Publishing Shares**")

To the extent that we or our publishing designees have asserted rights in Yasin's Publishing Shares anywhere in the world, for any purpose, including, without limitation, registration at publishing, administration, collection or other agencies and societies, we hereby, retroactive to the date of first creation unreservedly and irrevocably assign all such rights back to Yasin from our shares -- writer and publisher -- in each respective composition, thereby proportionally reducing our shares.

Further to the foregoing, commencing on the date of this notice, Yasin shall have the unfettered right to administer all rights in Yasin's Publishing Shares, collect all monies due in connection therewith, expressly including monies retroactively due but not yet paid, and shall not be subject to any so-called "controlled composition" clauses or other reductions, restrictions or controls.

Please revise, correct and promptly adjust your records, registrations and accounting systems to reflect the contents of this notice and make all reasonable business efforts to cooperate with Yasin in transferring full copyright ownership and administration in accordance herewith, to the publishing designee(s) she instructs, and ensure that any funds in connection with Yasin's Publishing Shares collected but not yet paid are promptly remitted to Yasin.

ALL MONEY IN LLC:

By: _____
(An authorized signatory)

11

T.Y.

48

SCHEDULE B

TO THE AGREEMENT DATED AS OF JANUARY 1, 2022 BETWEEN ALL MONEY IN LLC AND
TASLEEMA YASIN d/b/a CHOP SUEY MUSIC PUBLISHING LLC

COPYRIGHT ASSIGNMENT

Copyright Assignment ("Assignment") entered into on this 1st day of January, 2022 by and between All
Money In LLC ("Assignor"), the Estate of recording artist and songwriter Ermias Joseph Asghedom,
professionally known as "Nipsey Hussle" ("Artist"), and all publishing designees for Artist and Tasleema
Yasin d/b/a Chop Suey Music Publishing, LLC ("Yasin").  The Compositions and  ownership percentages
hereinbelow set forth from inception of their respective creation, shall  hereby be acknowledged,  assigned
and quitclaimed  to be entirely the property of Tasleema Yasin and her heirs, assigns and designees
("Yasin") in perpetuity, throughout the world, free of any claim whatsoever by us, other writers, other
publishers, other administrators, societies, agencies or otherwise, and by any and all persons deriving any
rights or interests therefrom:

**Hussle in the House 5%**
**Gotta Take It 15%**
**Rich Roll 10%**
**Hussle & Motivate 10%**

(Individually andcollectively, **"Yasin's Publishing Shares"**)

Assignor warrants that it has full power and authority on behalf of the Estate of Artist to enter into
this Assignment. This Assignment does not infringe the rights of any third party

ALL MONEY IN LLC:

By: _____
        (An authorized signatory)

T.Y.

12

SCHEDULE C

TO THE AGREEMENT DATED AS OF JANUARY 1, 2022 BETWEEN ALL MONEY IN LLC AND
TASLEEMA YASIN d/b/a CHOP SUEY MUSIC PUBLISHING LLC

RELEASE

T.Y.

13



1    BARTON, KLUGMAN & OETTING LLP
     Jeffrey B. Harris, a Professional Corporation (SBN 106919)
2    Christopher D. Higashi, a Professional Corporation (SBN 168667)
     350 South Grand Avenue
3    Suite 2200
     Los Angeles, CA 90071-3454
4    Telephone:   213-621-4000
     Facsimile:   213-625-1832
5    E-mail:    jharris@bkolaw.com

6    Decedent ERMIAS ASGHEDEOM,
     aka NIPSEY HUSSLE
7

8            **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9              **FOR THE COUNTY OF LOS ANGELES**

10

11    In Re:                           Case No. 19STPB04407

12    ERMIAS ASGHEDOM, aka NIPSEY      Date Action Filed:   May 10, 2019
     HUSSLE
13                                 Hon. Paul T. Suzuki
             Decedent.               Dept. No. 3
14

15                             **RELEASE OF CREDITOR'S CLAIM**

16

17

18

19

20

21

22

23

24

25

26

27

28                                           T.Y.

                                        1
              SATISFACTION AND RELEASE OF CREDITOR'S CLAIM

*(left margin, vertical)* BARTON, KLUGMAN & OETTING LLP / 350 SOUTH GRAND AVENUE, SUITE 2200 / LOS ANGELES, CALIFORNIA 90071-3454 / TELEPHONE (213) 621-4000



1    Claimant Tasleema Yasin listed on the attached claim filed in the above-captioned

2  matter and hereby releases the Estate and Samiel Asghedom, as the Administrator  of the

3  Estate, from any and all indebtedness relating to the Claim and hereby releases,

4  exonerates and discharges the Administrator of the Estate and his sureties from any and

5  all liability and accountability to me.

6

7  Dated: February ___, 2022

8                                          March 7, 2022

BARTON, KLUGMAN & OETTING LLP
350 SOUTH GRAND AVENUE, SUITE 2200
LOS ANGELES, CALIFORNIA  90071-3485
TELEPHONE (213) 621-4000

T.Y

2
SATIFACTION AND RELEASE OF CREDITOR'S CLAIM
W:\Working\Harris\Asghedom (Estate of Nipsey Hussle)\Tasleema Claim\Satisfaction and Release.Yasin.v5.docx

Electronically FILED by Superior Court of California, County of Los Angeles 9/4/2019 3:14 PM Sherri R. Carter, Executive Officer/Clerk, By H. Tam, Deputy Clerk

**DE-172**

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, state bar number, and address): | TELEPHONE AND FAX NOS.: | FOR COURT USE ONLY |
|---|---|---|
| Johnson & Johnson LLP<br>Daniel Lifschitz (SBN 285068)<br>439 North Canon Drive, Suite 200<br>Beverly Hills, California 90210 | 310-975-1080<br>310-975-1095 | |

ATTORNEY FOR (Name):

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** Los Angeles
STREET ADDRESS: 111 N Hill St.
MAILING ADDRESS: 111 N Hill St.
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Stanley Mosk

ESTATE OF (Name):

Ermias Joseph Asghedom                                                      DECEDENT

| **CREDITOR'S CLAIM** | CASE NUMBER:<br>19STPB04407 |
|---|---|

You must file this claim with the court clerk at the court address above before the LATER of (a) four months after the date letters (authority to act for the estate) were first issued to the personal representative, or (b) sixty days after the date the *Notice of Administration* was given to the creditor, if notice was given as provided in Probate Code section 9051. You must also mail or deliver a copy of this claim to the personal representative and his or her attorney. A proof of service is on the reverse.
**WARNING:** Your claim will in most instances be invalid if you do not properly complete this form, file it on time with the court, and mail or deliver a copy to the personal representative and his or her attorney.

1. Total amount of the claim: $ SEE EXHIBIT A
2. Claimant (name): Tasleema Yasin
   a. [✓] an individual
   b. [ ] an individual or entity doing business under the fictitious name of (specify):

   c. [ ] a partnership. The person signing has authority to sign on behalf of the partnership.
   d. [ ] a corporation. The person signing has authority to sign on behalf of the corporation.
   e. [ ] other (specify):
3. Address of claimant (specify): 439 North Canon Drive, Suite 200
   Los Angeles, CA 90012
4. Claimant is [✓] the creditor [ ] a person acting on behalf of creditor (state reason):

5. [ ] Claimant is [ ] the personal representative [ ] the attorney for the personal representative.
6. I am authorized to make this claim which is just and due or may become due. All payments on or offsets to the claim have been credited. Facts supporting the claim are [ ] on reverse [✓] attached.
I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.
Date: 8/21/19

Tasleema Yasin                                    ▶ Signature Redacted
(TYPE OR PRINT NAME AND TITLE)

**INSTRUCTIONS TO C...**

A. On the reverse, itemize the claim and show the date the service was re... service in detail, and indicate the amount claimed for each item. Do not include de... ...ral claims.
B. If the claim is not due or contingent, or the amount is not yet ascertainable, state the facts supporting the claim.
C. If the claim is secured by a note or other written instrument, the original or a copy must be attached (state why original is unavailable.) If secured by mortgage, deed of trust, or other lien on property that is of record, it is sufficient to describe the security and refer to the date or volume and page, and county where recorded. (See Prob. Code, § 9152.)
D. Mail or take this original claim to the court clerk's office for filing. If mailed, use certified mail, with return receipt requested.
E. Mail or deliver a copy to the personal representative and his or her attorney. Complete the *Proof of Mailing or Personal Delivery* on the reverse.
F. The personal representative or his or her attorney will notify you when your claim is allowed or rejected.
G. Claims against the estate by the personal representative and the attorney for the personal representative must be filed within the claim period allowed in Probate Code section 9100. See the notice box above.

(Continued on reverse)

| Form Approved by the<br>Judicial Council of California<br>DE-172 [Rev. January 1, 1998] | **CREDITOR'S CLAIM**<br>**(Probate)** | Probate Code, §§ 9000 et seq., 9153 |
|---|---|---|

| ESTATE OF *(Name):* | | CASE NUMBER: |
|---|---|---|
| Ermias Joseph Asghedom | DECEDENT | 19STPB04407 |

| | FACTS SUPPORTING THE CREDITOR'S CLAIM ☑ See attachment *(if space is insufficient)* | |
|---|---|---|
| Date of item | Item and supporting facts | Amount claimed |
| | AMOUNT NOT YET ASCERTAINED. SEE ATTACHED EXHIBIT A. | |
| | TOTAL: | $ |

**PROOF OF** ☑ **MAILING** ☐ **PERSONAL DELIVERY** **TO PERSONAL REPRESENTATIVE**
*(Be sure to mail or take the original to the court clerk's office for filing)*

1. I am the creditor or a person acting on behalf of the creditor. At the time of mailing or delivery I was at least 18 years of age.
2. My residence or business address is *(specify):* 439 North Canon Drive, Suite 200, Beverly Hills, CA 90210

3. I mailed or personally delivered a copy of this *Creditor's Claim* to the personal representative as follows *(check either a or b below):*
   a. ☑ **Mail.** I am a resident of or employed in the county where the mailing occurred.
      (1) I enclosed a copy in an envelope AND
         (a) ☐ deposited the sealed envelope with the United States Postal Service with the postage fully prepaid.
         (b) ☑ placed the envelope for collection and mailing on the date and at the place shown in items below following our ordinary business practices. I am readily familiar with this business' practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully prepaid.
      (2) The envelope was addressed and mailed first-class as follows:
         (a) Name of personal representative served: Terrence M. Franklin
         (b) Address on envelope: Sacks, Glazier, Franklin & Lodise LLP
               350 S Grand Ave #3500, Los Angeles, CA 90071
         (c) Date of mailing: September 4, 2019
         (d) Place of mailing *(city and state):* Beverly Hills, CA
   b. ☐ **Personal delivery.** I personally delivered a copy of the claim to the personal representative as follows:
      (1) Name of personal representative served:
      (2) Address where delivered:

      (3) Date delivered:
      (4) Time delivered:

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: *September 4, 2019*

*Viktoriya Cassis*
. . . . . . . . . . . . . . . . . . . . . . . . ►
(TYPE OR PRINT NAME OF CLAIMANT)                                    (SIGNATURE OF CLAIMANT)

DE-172 [Rev. January 1, 1998]                    **CREDITOR'S CLAIM**                    Page two
                                                        (Probate)

**EXHIBIT A**

## DECLARATION OF TASLEEMA YASIN

I, Tasleema Yasin, declare as follows:

1.      I am an individual over 18 years of age and a resident of Los Angeles, California. I have personal knowledge of the facts contained herein, and if called upon to testify, I could and would competently do so.

2.      In November of 2016, I collaborated with decedent Ermias Joseph Asghedom on a musical track entitled "Hussle & Motivate." I wrote and performed the ascending four-note vocal phrase featured throughout the song's runtime, as well as a countermelody in my higher register featured prominently during the song's chorus.

3.      Asghedom included "Hussle & Motivate" as a track on his final recorded album, "Victory Lap," which was released on February 16, 2018. Asghedom never obtained permission from nor paid any royalties to me to include "Hussle & Motivate" on "Victory Lap."

4.      Because "Hussle & Motivate" constitutes a work of joint authorship under the United States Copyright Act "prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole" (17 U.S.C. § 101), Asghedom was obligated to credit and account to me for my ratable share of any monies earned by Asghedom in connection with "Hussle & Motivate." See *Oddo v. Ries*, 743 F.2d 630, 633 (9th Cir. 1984); *Gaiman v. McFarlane*, 360 F.3d 644, 652 (7th Cir. 2004).

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct, to the best of my knowledge.  Executed this 21st day of August, 2019 in Los Angeles, California.

Signature Redacted

DECLARATION OF TASLEEMA YASIN
1